```
 1                IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
 2                          AT CHARLESTON


 3
      _____x
 4                                 :
      UNITED STATES OF AMERICA,    :   CRIMINAL ACTION NO.
 5                                 :
                  Plaintiff,       :   2:14-cr-00240
 6                                 :
                   -vs-            :
 7                                 :
      JOSHUA MARK TAYLOR,          :
 8                                 :
                  Defendant.  :
 9    _____x

10                         PLEA HEARING
            BEFORE THE HONORABLE JOHN T. COPENHAVER, JR.,
11                  UNITED STATES DISTRICT JUDGE
                           JUNE 23, 2015
12


13
      APPEARANCES:
14    FOR THE PLAINTIFF:        AUSA LISA G. JOHNSTON
                                Assistant United States Attorney
15                              U.S. Attorney's Office
                                P.O. Box 1713
16                              Charleston, WV  25326-1713


17


18


19    FOR THE DEFENDANT:        AFPD RHETT H. JOHNSON
                                Assistant Federal Public Defender
20                              Federal Public Defender's Office
                                300 Virginia Street, East
21                              Room 3400
                                Charleston, WV 25301
22
              Proceedings recorded by mechanical stenography,
23    transcript produced by computer.
      _____
24            CATHERINE SCHUTTE-STANT, RDR, CRR,
                 Federal Official Court Reporter
25            300 Virginia Street, East, Room 6009
                    Charleston, WV 25301
```

USA v TAYLOR

```
1              P-R-O-C-E-E-D-I-N-G-S              1:40 p.m.

2              THE CLERK:  All rise.

3              THE COURT:  Good afternoon.  Please be seated.

4              THE CLERK:  The case before the Court is the

5  United States of America versus Joshua Mark Taylor,

6  Criminal Number 2:14-00240.

7      Would counsel note their appearances for the record,

8  please.

9              MS. JOHNSTON:  Lisa Johnston on behalf of the

10  United States, Your Honor.  Seated to my left is Sergeant

11  Horrocks and Sergeant Eldridge of the West Virginia State

12  Police.

13              THE COURT:  Thank you.

14              MR. JOHNSON:  Rhett H. Johnson on behalf of Mr.

15  Taylor.

16              THE COURT:  Thank you.

17      And, Ms. Johnston, the purpose of the hearing?

18              MS. JOHNSTON:  Your Honor, it's my understanding

19  that the defendant in this case has agreed to plea to Count

20  Two of the indictment which is pending against him.

21              THE COURT:  And that's pursuant to a plea

22  agreement?

23              MS. JOHNSTON:  It is, Your Honor.

24              THE COURT:  Thank you.

25      And is that your understanding, as well, Mr. Johnson?
```

USA v TAYLOR

```
 1              MR. JOHNSON:  Yes, Your Honor.
 2              THE CLERK:  Will the defendant please stand to be
 3      sworn and raise your right hand.
 4              JOSHUA MARK TAYLOR, DEFENDANT, SWORN
 5                          EXAMINATION
 6      BY THE COURT:
 7      Q.   Mr. Taylor, state your full name, please.
 8      A.   Joshua Mark Taylor.
 9      Q.   And what city or town do you live in?
10      A.   Weirton, West Virginia.
11      Q.   And how old are you?
12      A.   31.
13      Q.   What's the extent of your education?
14      A.   I have a bachelor's degree in physical education and
15      health education, and three years towards a master's degree
16      in education.
17      Q.   And what institutions did you attend?
18      A.   West Virginia University and Ashford University.
19      Q.   And so it's fair to say that you read, and read well?
20      A.   Yes, sir.
21      Q.   Write and write well?
22      A.   Yes, sir, I do.
23      Q.   And were you able to read and understand both the
24      indictment and the plea agreement in your case?
25      A.   Yes, Your Honor.
```

USA v TAYLOR

```
 1    Q.    Have you at any time in the last few years been under

 2    the treatment of a physician or anyone for a serious

 3    physical illness or ailment?

 4    A.    No, sir.

 5    Q.    Have you ever had occasion to consult or to be under

 6    the treatment of a psychiatrist, physician, counselor,

 7    psychologist or anyone for a mental illness or emotional

 8    disorder?

 9    A.    Yes, sir.

10    Q.    Tell me about that.

11    A.    Yes, sir.  I have been diagnosed with anxiety and

12    depression.

13    Q.    When was that diagnosis first made?

14    A.    2007.

15    Q.    And are you under treatment now?

16    A.    I am, sir.

17    Q.    And so have you been under treatment for anxiety and

18    depression from 2007 until now?

19    A.    Yes.

20    Q.    Do you take medication for that condition?

21    A.    Yes, Your Honor.

22    Q.    And what is that?

23    A.    It is --

24    Q.    That is, what are you taking now?

25    A.    Buspar and Celexa.
```

USA v TAYLOR

1    **Q.**    And those medications are prescribed by whom?

2    **A.**    Doctor -- right now, the doctor at the jail, sir.

3    Before that, Dr. Tomiya [phonetic] in Follansbee, West

4    Virginia.

5    **Q.**    And is he the one who was treating you for anxiety and

6    depression?

7    **A.**    Yes, sir.

8    **Q.**    And you believe you were taking drugs similar to those

9    that you're now prescribed at the jail; is that correct?

10    **A.**    Yes, sir.

11    **Q.**    During the past 48 hours, except for the medication

12    that you've just stated, have you had any sedatives,

13    medication, drugs, or alcohol?

14    **A.**    No, Your Honor.

15    **Q.**    That is, drugs of any kind?

16    **A.**    No, sir.

17    **Q.**    And during the past week, have you taken the prescribed

18    dosage of medications for your anxiety and depression that

19    you've told me about in the dosage prescribed by your

20    physician, no more, no less?  Is that correct?

21    **A.**    Yes, sir, it is.

22    **Q.**    Now then, the Court understands that you propose to

23    enter a plea today to Count Two.  It's rather brief, and I'm

24    going to read it to you.

25         In that count, it's charged that on or about December

USA v TAYLOR

1    14, 2013, at or near Oak Hill in Fayette county, West

2    Virginia, in the Southern District of West Virginia, and

3    elsewhere, you the defendant, Joshua Mark Taylor, did

4    knowingly receive child pornography, as defined in Title 18,

5    United States Code, Section 2256(8)(A), that is, a visual

6    depiction of a minor, whose identity is known to the grand

7    jury, that had been shipped and transported in and affecting

8    interstate and foreign commerce by any means, including by

9    Internet and cellular phone.

10        Do you understand all that?

11   **A.**   Yes, sir, I do.

12   **Q.**   And that is charged to be in violation of Title 18,

13   United States Code, Sections 2252A(a)(2) and 2252A(b)(1).

14        Do you understand that?

15   **A.**   Yes, I do.

16   **Q.**   Now then, let me note to you that if you went to trial

17   on Count Two, instead of proceeding with what I understand

18   is your plea agreement, and perhaps a not guilty plea --

19   that is, a guilty plea to Count Two here today pursuant to

20   that plea agreement -- it would be necessary that the

21   government prove to the satisfaction of this Court and a

22   jury the following essential elements of the offense charged

23   in Count Two.

24        And I'm going to make reference to some terms in those

25   elements, one of which is "child pornography."  And by

 1    "child pornography," it is meant any visual depiction,

 2    including any photograph, film, video, picture or computer,

 3    or computer-generated image or picture, whether made or

 4    produced by electronic, mechanical, or other means, of

 5    sexually explicit conduct, where, the production of such

 6    visual depiction involves the use of a minor engaged in

 7    sexually explicit conduct.

 8        Do you understand that definition?

 9    **A.**    I do, Your Honor.

10    **Q.**    I'm also going to refer to the term "minor."  Although

11    it's rather self-explained in the indictment in Count Two

12    any way, but "minor" means any person under the age of the

13    18 years.

14        Do you understand that, do you?

15    **A.**    Yes, I do.

16    **Q.**    And then lastly, I'm going to be referring to sexually

17    explicit conduct.  And by sexually explicit conduct, that

18    for purposes of the Count Two means actual or simulated

19    lascivious exhibition of the genitals or pubic area of any

20    person.

21        Do you understand that as well?

22    **A.**    I do understand.

23    **Q.**    Now, those definitions in line, the three essential

24    elements of the offense to which you're proposing to plead

25    guilty in Count Two are as follows:

USA v TAYLOR

1          One, that on or about December 14, 2013, at or near Oak

2     Hill, in Fayette County, West Virginia, you received child

3     pornography, as I've just defined it for you, that is, a

4     visual depiction of a minor, whose identity is known to the

5     grand jury, under the age of 18 years, engaged in sexually

6     explicit conduct.

7          Do you understand the first element?

8     **A.**   Yes, I do.

9     **Q.**   Secondly, that the visual depiction had been shipped

10    and transported in and affecting interstate and foreign

11    commerce by any means, including by Internet, cellular

12    phone.

13         Do you understand that also?

14    **A.**   Yes, I do.

15    **Q.**   And lastly, that you did so knowingly and

16    intentionally.

17         Do you understand that also?

18    **A.**   I do, Your Honor.

19    **Q.**   Now then, have you discussed thoroughly the charges

20    contained in the indictment and, in particular, Count Two

21    with your attorney, Mr. Johnson?

22    **A.**   Pardon?

23    **Q.**   Have you discussed the charges with your attorney, Mr.

24    Johnson, that are set forth in this indictment?

25    **A.**   Yes, I have.

USA v TAYLOR

1    **Q.**   Particularly, Count Two?

2    **A.**   Yes, I have.

3    **Q.**   Did you tell him all the facts?

4    **A.**   I did.

5    **Q.**   Has he counseled and advised you as to the nature of

6    the offense with which you're charged in Count Two?

7    **A.**   Yes, sir, he has.

8    **Q.**   Insofar as you can tell, has he also counseled and

9    advised you as to all possible defenses that you may have to

10   those charges?

11   **A.**   Absolutely, Your Honor.

12   **Q.**   Do you fully understand then that which is charged in

13   Count Two?

14   **A.**   I do.

15   **Q.**   Are you ready to enter a plea to that charge?

16   **A.**   Yes.

17            THE COURT:  The Court understands that a plea

18   agreement has been entered into, and I'll ask, Ms. Johnston,

19   if you have that agreement, if I might see it, please?

20            MS. JOHNSTON:  I do, Your Honor.  May I approach?

21            THE COURT:  Please.

22   BY THE COURT:

23   **Q.**   Mr. Taylor, I have before me what appears to be a

24   ten-page written plea agreement in letter form.  It's dated

25   April 21, 2015, and it's addressed to your attorney, Mr.

USA v TAYLOR

1    Johnson.  It's from the United States Attorney and signed on

2    his behalf by Ms. Johnston, as Assistant United States

3    Attorney.  And there's a three-page Stipulation of Facts

4    attached to it.

5         Is that the plea agreement that you read?

6    **A.**   Yes, it is.

7    **Q.**   Do you believe you understand everything in it?

8    **A.**   I do.

9    **Q.**   And anything about it that you don't understand?

10   **A.**   No, sir.

11   **Q.**   Now, notwithstanding your telling me that, I'm going to

12   go over this agreement with you paragraph-by-paragraph, and

13   if, as I do, if there's anything about a particular

14   paragraph or the agreement itself, for that matter, that you

15   don't understand, I want you to interrupt me right in the

16   middle of my going over it with you and we'll take it up

17   right then.

18        Do you promise to do that?

19   **A.**   I do.  I promise.

20   **Q.**   Thank you.

21        THE COURT:  And, Mr. Johnson, could you place the

22   original of this agreement before Mr. Taylor?

23        MR. JOHNSON:  Yes, Your Honor.

24   BY THE COURT:

25   **Q.**   And, Mr. Taylor, you may be seated as we go through

1    this.

2          The opening paragraph notes that you and the United

3    States have reached the agreement that follows.  And then,

4    paragraph numbered 1 sets forth the pending charges, and

5    that includes Count Two that I've already been over with

6    you, and that includes the other four counts in that

7    indictment.

8          Are you familiar with all that?

9    **A.**   Yes, sir.

10   **Q.**   Paragraph numbered 2 states that you agree to plead

11   guilty to Count Two, and following sentencing, the United

12   States will move the Court to dismiss the other four counts,

13   as well as the forfeiture provision that's contained in this

14   same indictment.

15         Do you understand that as well?

16   **A.**   I do.

17   **Q.**   I note to you that the maximum potential penalty for

18   the offense to which you've pled guilty is imprisonment for

19   a period of not less than five years, and up to 20 years; a

20   fine of $250,000, or twice the gross pecuniary gain or twice

21   the gross pecuniary loss resulting from your conduct,

22   whichever is greater; three, a term of supervised release of

23   not less than five years and as long as life; four, a

24   mandatory Special Assessment of $100; and five, an order of

25   restitution as set forth there.

USA v TAYLOR

```
 1          Do you understand all that?
 2   A.   Yes, I do.
 3   Q.   I understand that I mistakenly stated that the
 4   imprisonment to which you're subject, and it is for a period
 5   of not less than five years, and I should add, and it could
 6   be as long as 20 years.
 7          Do you understand that?
 8   A.   Yes, sir.
 9   Q.   Now, as we all know, this agreement really contains
10   another provision in it, which says that you're agreeing to,
11   along with the government, to imprisonment for a term of 15
12   years.
13          Do you understand that?
14   A.   Yeah.  Yes, I do.
15   Q.   And so even though I've stated to you that period of
16   not less than five, and as long as 20, if the Court accepts
17   this plea agreement, the Court is bound by that, so are you,
18   so is the government, and that would mean that the sentence
19   would then be 15 years' imprisonment.
20          Do you understand that?
21   A.   I understand, sir.
22   Q.   Now then, with respect to the other provisions, I'll
23   come back to those in a moment.  The first one of which is
24   the $100 Special Assessment, and I understand that,
25   according to the next paragraph, is to be paid by you out of
```

1    the Inmate Financial Responsibility Program.

2        Paragraph 5 has to do with restitution.  And there it's

3    noted that you agree that you owe restitution to the victim

4    in this case for the victim's losses.  And you agree to pay

5    that restitution with interest as allowed by law to the full

6    extent financially feasible, and in aid of that restitution,

7    you agree to that which is set forth in (a), (b), (c), (d),

8    and (e) of paragraph 5.

9        And have you read all of those items, and do you

10   understand them?

11   **A.**   Yes, sir, I've read it and I understand.

12   **Q.**   And the last one is that you agree not to appeal any

13   order of the district court imposing restitution.  So you've

14   left that open to the Court --

15   **A.**   Yes, sir.

16   **Q.**   -- to impose restitution in whatever amount it sees

17   fit.

18   **A.**   Yes, sir.

19   **Q.**   Do you understand that?

20   **A.**   Yes, sir, I understand.

21   **Q.**   Now then, the next paragraph on abandonment of property

22   states that you agree to release, relinquish, waive, and

23   abandon to the United States or the state of West Virginia,

24   any and all right, title, and interest you have to the

25   iPhone, the iPod, and the laptop computer that are each

1    described there.

2        Do you understand that?

3    **A.**    Yes, sir.

4    **Q.**    And it's further noted that property so abandoned by

5    you will be destroyed or otherwise disposed of by federal,

6    state, or local law enforcement officers according to law.

7        Do you understand that also?

8    **A.**    Yes, sir.

9    **Q.**    The next paragraph, 7, on payment of monetary

10   penalties, have you read that, and do you understand it?

11   **A.**    I do.

12   **Q.**    Paragraph 8 on cooperation states that you will be

13   forthright and truthful with the United States Attorney's

14   Office and other law enforcement agencies with regard to all

15   inquiries made pursuant to this agreement, and that you will

16   give signed, sworn statements, and grand jury and trial

17   testimony upon request of the United States.

18       Do you understand that also?

19   **A.**    I do.

20   **Q.**    The next two paragraphs on use immunity and limitations

21   on immunity; have you been over that thoroughly with Mr.

22   Johnson, and has he explained it to you, and do you

23   understand what's set forth in those two paragraphs?

24   **A.**    Yes, he's explained it.

25   **Q.**    And you believe you understand it?

USA v TAYLOR

 1    **A.**   Yes, sir.

 2    **Q.**   Paragraph 11 refers to the three-page Stipulation of

 3    Facts that is attached.  Do you understand by Stipulation of

 4    Facts is meant agreement of facts?

 5    **A.**   Yes, sir.

 6    **Q.**   That means you the United States agree that the facts

 7    as stated in that stipulation are true and correct?

 8        Do you understand that?

 9    **A.**   Yes, sir.

10    **Q.**   Now, you also understand the Court's not bound by that

11    stipulation, but to the extent those facts have to do with

12    this case, including sentencing, you agree to them as being

13    true and correct?

14    **A.**   Yes, sir, I do.

15            THE COURT:  And I'm going to ask, if you would, at

16    this time, Ms. Johnston, to read that into the record,

17    although I would like to ask the defendant one further

18    question first.

19    BY THE COURT:

20    **Q.**   Mr. Taylor, do you understand everything in that

21    Stipulation of Facts?

22    **A.**   I do.

23    **Q.**   And anything about it that you don't understand?

24    **A.**   No, sir.

25    **Q.**   The stipulation is somewhat lengthy, and I want to

1    mention to you, just as I have earlier, if there's anything

2    about the Stipulation of Facts that you don't understand, I

3    want you to interrupt Ms. Johnston just as she's going over

4    it, and we'll take it up right then.

5        And, Ms. Johnston, would you be good enough to read

6    into the record the Stipulation of Facts?

7            MS. JOHNSTON:  Yes, Your Honor.

8        The Stipulation of Facts provide as follows:

9        The United States and Joshua Mark Taylor, Mr. Taylor,

10   stipulate and agree that the facts comprising the offense of

11   conviction, Count Two of the indictment in the Southern

12   District of West Virginia, Criminal Number 2:14-00240 and

13   other criminal conduct, include the following:

14       On or about March 4, 2013, Mr. Taylor was hired by the

15   Fayette County, West Virginia Board of Education to teach

16   during the 2013-2014 school term at Collins Middle School,

17   located in Oak Hill, Fayette County, West Virginia.  While

18   teaching at Collins Middle School, beginning in or about

19   November of 2013, and continuing to in or about January of

20   2014, Mr. Taylor engaged in sexual acts with a 12-year-old

21   female, ("the minor"), who was enrolled at Collins Middle

22   School during the 2013-2014 school term.  Specifically, Mr.

23   Taylor engaged in sexual intercourse and oral intercourse

24   with the minor when she was in the custody, care or

25   supervisory control of Mr. Taylor.

1        And it sets forth, Your Honor, the specific guideline

2    sections that are applicable to that conduct.  And they are

3    as follows, capital "USSG" --

4            THE COURT:  I don't think it's necessary to read

5    that.

6            MS. JOHNSTON:  Okay, Your Honor.

7        The next paragraph.

8        Beginning in or about November, 2013, and continuing to

9    in or about January, 2014, Mr. Taylor utilized a cell phone

10   to exchange a large volume of text messages with the minor.

11   Sending text messages via a cell phone or the Internet

12   constitutes using a means and facility of interstate

13   commerce.  On or about December 14, 2013, and continuing to

14   on or about December 15, 2013, at or near Oak Hill, Fayette

15   County, West Virginia, within the Southern District of West

16   Virginia, Mr. Taylor knowingly sent very sexually graphic

17   text messages via a cell phone to persuade and entice the

18   minor to engage in sexual activity, for which Mr. Taylor

19   could be charged with a criminal offense in the state of

20   West Virginia; that is, "sexual abuse by a parent, guardian,

21   custodian or a person in position of trust to a child" in

22   violation of the West Virginia Code, Section 61-8D-5.

23       Beginning in or about November 2013, and continuing to

24   in or about January 2014, Mr. Taylor also knowingly

25   persuaded and induced the minor to engage in sexually

USA v TAYLOR

1    explicit conduct for the purpose of producing a video

2    depiction of such conduct.  At the time the sexually

3    explicit images were made, the minor was located in Oak

4    Hill, Fayette County, West Virginia.  An iPod, which is a

5    facility or means of interstate commerce, was used to

6    produce the sexually explicit images.  The images depict the

7    lascivious exhibition of the minor's genital or pubic area.

8        On or about December 14, 2013, at or near Oak Hill,

9    Fayette County, West Virginia, Mr. Taylor knowingly received

10   from the minor, child pornography as defined in 18, U.S.C.,

11   Section 2256(8)(A), that is, a sexually explicit image of

12   the minor.  The sexually explicit image depicts the

13   lascivious exhibition of the minor's genital or pubic area.

14   Mr. Taylor received the sexually explicit image of the minor

15   on his cell phone.

16       That's Count Two of the indictment, Your Honor.

17       On or about December --

18           THE COURT:  And let me interrupt you, if I might.

19   BY THE COURT:

20   **Q.**   Do you understand everything in that Stipulation of

21   Facts down this point?

22   **A.**   Yes, sir, I understand.

23   **Q.**   Anything about it that you don't understand?

24   **A.**   No, sir.

25           THE COURT:  Thank you.  Please go ahead.

USA v TAYLOR

1              MS. JOHNSTON:   On or about December 23rd, 2013, at

2     or near Oak Hill, Fayette County, West Virginia, Mr. Taylor

3     did knowingly distribute or attempt to distribute in

4     interstate commerce, child pornography as defined in Title

5     18, U.S.C., Section 2256(8)(A), that is, a sexually explicit

6     image of the minor.  The sexually explicit image depicts the

7     lascivious exhibition of the minor's genital or pubic area.

8     Mr. Taylor used his cell phone to distribute or attempt to

9     distribute the sexually explicit image of the minor.

10         On or about January 19, 2014, Mr. Taylor sent the minor

11    the following text messages intending to obstruct or impede

12    the administration of justice with respect to the

13    investigation or prosecution of the instant case, quote,

14    "I am on the news in Weirton.  Delete everything.  Just

15    remember we weren't together."

16         That's the entire stipulation, Your Honor.  It's signed

17    by Mr. Taylor, his attorney, Mr. Johnson, and myself, on

18    behalf of the United States.

19              THE COURT:   Thank you.

20    BY THE COURT:

21    **Q.**   Mr. Taylor, do you understand everything in that

22    Stipulation of Facts?

23    **A.**   Yes, sir, I understand.

24    **Q.**   Anything about it that you don't understand?

25    **A.**   No, sir.

1    **Q.**   Let me note to you that if you should withdraw from

2    this plea agreement, or if it is voided because you violate

3    any of its terms, and if you're later then prosecuted on any

4    of the charges in the indictment, that is, Count Two, as

5    well as Counts One, Three, Four and Five, then, during the

6    course of that case, the government may use as evidence

7    against you that to which you've agreed as set forth in the

8    Stipulation of Facts.

9        Do you understand that?

10    **A.**   Yes, sir.

11    **Q.**   And, more particularly, at a trial in the case, whether

12    before the Court or a jury, as well, the government may

13    introduce as evidence against you that Stipulation of Facts

14    to which you've agreed.

15        Do you understand that as well?

16    **A.**   Yes, Your Honor.

17    **Q.**   The next paragraph has an agreement upon sentencing

18    guidelines and I want to go over that with you.  I'm not

19    sure just how significant it is in view of the agreement of

20    the parties that the sentence in this case should be as to

21    imprisonment 15 years, but I'm going to go over it with you

22    anyway since it's all set out here.

23        First of all, do you understand what's meant by the

24    advisory United States Sentencing Guidelines?

25    **A.**   Yes, I do.

USA v TAYLOR

1    Q.   Those guidelines are drawn based on quite a number of

2    factors, including such things as your role in the offense,

3    your criminal history, whether you've accepted

4    responsibility for your misconduct, whether you've

5    obstructed justice in any way, whether you're a career

6    criminal, whether you make your livelihood from crime, and

7    quite a number of factors.  And a number of those other

8    factors are those that are set forth in this paragraph on

9    the agreement that you and the government have reached on

10   the application of the sentencing guidelines in this case.

11        The Court notes that one of the factors that is of

12   particular importance in determining the guideline range in

13   this case, which would normally be a rather narrow range,

14   not in this case, it's 15 years' imprisonment.  It may be a

15   range otherwise insofar as fine is concerned.  But among the

16   other factors that the Court will be taking into account,

17   and there are quite a few others, is that of relevant

18   conduct; meaning that if you've engaged in other conduct

19   that would constitute the same pattern of conduct or the

20   same course of conduct as that charged in Count Two, then

21   those other instances could be added to that which is set

22   forth in Count Two, and as those instances add up, so, too,

23   do the sentencing guidelines tend to suggest a harsher

24   sentence.  But, once again, I get back to the point, that

25   that's more of a consequence with respect to the fine than

1   anything else.

2       Now then, in going through it, I'll note that you have

3   agreed to various factors that wind up with what we call a

4   Base Offense Level of 32.  And when you add all these other

5   enhancements for offense involving a minor between the age

6   of 12 and 16 years, another one for commission of a sexual

7   act or sexual conduct, another for distribution of the

8   images that are referred to as having been produced, and

9   taking into account that the minor is deemed in your

10  custody, care, or supervisory control, and that the offense

11  involved the use of an interactive computer service to

12  persuade the minor to engage in sexually explicit conduct,

13  as well as obstruction of justice, all wind up with an

14  adjusted offense level of 44.  That is extremely high.  And

15  although it may be that you're entitled to a credit for

16  acceptance of responsibility, that sometimes isn't afforded

17  to one who has already agreed that that individual's engaged

18  in obstruction of justice.

19      But if it is given in its maximum, your total offense

20  level would be 41.  And I simply note to you that the

21  highest offense level with respect to the guidelines is at

22  the 43 level.  And the Court hastens to add, once again,

23  though, by virtue of the next paragraph, that indicates what

24  the term of imprisonment itself will be if the Court accepts

25  the plea agreement.

1        So do you wish any further explanation on the

2   sentencing guidelines?

3   **A.**    No, sir, I do not.

4   **Q.**    The next paragraph, which is an extremely consequential

5   one in this agreement reads as follows:

6        "Pursuant to Rule 11(c)(1)(C) of the Federal Rules of

7   Criminal Procedure, the United States and Mr. Taylor agree

8   that a sentence of imprisonment of 15 years, to be followed

9   by a term of supervised release of 20 years is appropriate.

10  Mr. Taylor understands that this agreement pursuant to Rule

11  11(c)(1)(C) is not binding on the District Court unless and

12  until the District Court accepts this plea agreement.  If

13  the District Court refuses to accept this plea agreement,

14  Mr. Taylor has the right to void this agreement and may

15  withdraw his guilty plea."

16       Do you understand all that?

17  **A.**    Yes, sir.

18  **Q.**    The next paragraph notes that if the Court sentences

19  you to that term of 15 years' imprisonment, and if the Court

20  imposes a fine that comports with the guideline range that

21  is set forth here in this agreement, that is, within the

22  guidelines, I should say, that you forever waive your right

23  to appeal your sentence.

24       Do you understand that?

25  **A.**    I understand.

1    **Q.**    And do you further understand that you're waiving one

2    other very important right under this agreement, as well,

3    and that is -- and I'll note to you, once appellate rights

4    have been exhausted or not used at all, you may have a basis

5    for collaterally attacking your conviction and sentence in

6    this case.  You're also waiving that right as well.

7        Do you understand that?

8    **A.**    Yes, sir.

9    **Q.**    And there's only one exception to all that I've told

10   you, and that applies both to appeal, but, more likely, it

11   would relate to collateral attack, and that is -- and the

12   collateral attack, I should mention to you, is a kind of

13   habeas proceeding, sometimes called a Section 2255 motion --

14   the one exception is for ineffective assistance of counsel.

15   That is the only ground left to you.

16       Do you understand that?

17   **A.**    I do.

18   **Q.**    Let me ask the parties -- I see it now.  And what I did

19   not mention to you was that, just as the sentence of

20   imprisonment must be 15 years if the Court accepts that

21   agreement, so, too, the term of supervised release under the

22   agreement is to be 20 years in length.  I think I mentioned

23   to you that it could be -- or must be at least the five

24   years and could be as long as life.  This indicates it will

25   be 20 years if the Court accepts this agreement.

USA v TAYLOR

1          Do you understand that?

2    **A.**    I understand.

3    **Q.**    And so I'm going to come back and talk to you further

4    about supervised release here shortly.

5          Now then, do you understand everything in this

6    agreement down to this point?

7    **A.**    Yes, sir, I understand.

8    **Q.**    The next paragraph notes that you forever waive your

9    right to receive or request from any department or agency of

10   the United States any records pertaining to the

11   investigation or prosecution of this case.

12         Do you understand that?

13   **A.**    Yes, I do.

14   **Q.**    This states that you specifically waive that right with

15   respect to the Freedom of Information Act and the Privacy

16   Act of 1974, but you're waiving it on every other ground as

17   well.

18         Do you understand that also?

19   **A.**    Yes, sir.

20   **Q.**    The next paragraph has to do with the Sex Offender

21   Registration requirement.  And it's noted there that you

22   must register as a sex offender and keep the registration

23   current in each of the following jurisdictions:

24         Where you reside, where you're a student, where you're

25   employed.  And that is a forever requirement.

USA v TAYLOR

```
1           Do you understand?
2    A.    I understand.
3    Q.    That's for life?
4    A.    Yes, sir.
5    Q.    And the Court would ask if you've read the rest of that
6    paragraph, and do you understand it?
7    A.    I do.
8    Q.    And do you also understand that if you fail to comply
9    with those terms and conditions that I just noted, that that
10   would subject you to prosecution for failure to register
11   under federal law, and that's punishable by a fine or
12   imprisonment, or both?
13          Do you understand that?
14   A.    Yes, sir.
15   Q.    Paragraph 17, labeled "Final Disposition," means
16   sentencing.  And there it's noted that the United States
17   reserves the right to inform the Probation Office and the
18   Court of all relevant facts and conduct, respond to
19   questions raised by the Court, present evidence and argument
20   relevant to the factors that are set forth in Title 18,
21   United States Code, Section 3553(a).
22          Those are the factors that the Court looks to in order
23   to determine the factors that one takes into account in
24   arriving at the appropriate sentence in the case.  In this
25   case, however, the imprisonment term and supervised release
```

1   term are both controlled by agreement between you and the

2   government.  And if the Court accepts this plea agreement,

3   then the Court would be required to sentence you to a term

4   of imprisonment of 15 years, and a term of supervised

5   release of 20 years.

6        Do you understand all that?

7   **A.**   I do.

8   **Q.**   The next paragraph notes that if either you or the

9   United States violate the terms of this agreement, the other

10  party may void it.

11       Do you understand that as well?

12  **A.**   Yes, sir.

13  **Q.**   And the last paragraph states that this agreement

14  constitutes the entire agreement between you and the United

15  States, that there are no agreements, understandings, or

16  recommendations as to any other pending or future charges

17  against you in any court other than this Court, the United

18  States District Court, for the Southern District of West

19  Virginia.

20       Do you understand that?

21  **A.**   Yes, sir.

22  **Q.**   It adds as a further provision, and I'll quote it,

23  "Although this written agreement constitutes the entire

24  agreement between the United States and Mr. Taylor in the

25  matter, the United States is aware of the plea agreement

1    executed by Mr. Taylor in Criminal No. 14-F-242, in the

2    Circuit Court of Fayette County, West Virginia, a copy of

3    which is attached hereto."

4         Do you understand that as well?

5    **A.**    I do.

6              THE COURT:  Mr. Johnson, would you look at that

7    agreement and see if that's attached?

8              MS. JOHNSTON:  Your Honor, I apologize.  I have

9    the signed copy now here with me.  Mr. Johnson has a copy of

10   it as well.

11             THE COURT:  Could you attach it now, please?

12             MS. JOHNSTON:  Yes, I can, Your Honor.

13             MR. JOHNSON:  Your Honor, would the Court like me

14   to approach with that agreement?

15             THE COURT:  Pardon me?

16             MR. JOHNSON:  Mr. Taylor has confirmed that is the

17   agreement that he signed in Fayette County.

18        Would the Court like me to approach with a copy?

19             THE COURT:  Very good.  Thank you.

20        And I understand it is attached now?  Correct?

21             MR. JOHNSON:  Yes, Your Honor.

22             THE COURT:  Paper clip will do it.

23             MR. JOHNSON:  Yes, Your Honor.

24             THE COURT:  We'll take care of it.

25             MR. JOHNSON:  Thank you, Your Honor.

USA v TAYLOR

```
1    BY THE COURT:
2    Q.   Mr. Taylor, do you understand everything in this
3    agreement?
4    A.   Yes, sir.
5    Q.   Is there anything about it that you don't understand?
6    A.   No, Your Honor.
7    Q.   Did you approve of that agreement when it was reached?
8    A.   Yes, sir.
9    Q.   And when you signed it?
10   A.   Yes, sir.
11   Q.   And do you approve of it now?
12   A.   I do, Your Honor.
13   Q.   Is that your signature at the foot of the tenth page of
14   the agreement?
15   A.   It is, Your Honor.
16   Q.   And at the foot of the third page of the Stipulation of
17   Facts?
18   A.   It is, Your Honor.
19   Q.   And are those your initials at the foot of the other
20   pages of those two items?
21   A.   Yes, sir.
22   Q.   Thank you.
23        THE COURT:  Mr. Johnson, if you'd hand that
24   agreement to the clerk for filing, please.
25        MR. JOHNSON:  Yes, Your Honor.
```

USA v TAYLOR

```
 1              THE COURT:  Kelley.
 2         (Pause.)
 3    BY THE COURT:
 4    Q.   Mr. Taylor, if you'd stand once again, please.
 5         Are you ready to enter a plea to Count Two?
 6    A.   Yes, sir.
 7    Q.   What is your plea to that count?
 8    A.   Guilty.
 9    Q.   Before I accept your plea, I want to make certain that
10    you understand a number of things in connection with your
11    plea, the charges against you, and your constitutional
12    rights.
13         First of all, the indictment in this case is only a
14    formal charge which informs you of the offenses with which
15    you're charged and serves to bring you into Court to answer
16    those charges; it is not any evidence whatever of guilt.
17         Do you understand that?
18    A.   Yes, sir.
19    Q.   Do you also understand that you're entitled to the
20    assistance of a lawyer at every stage of these proceedings,
21    including trial, should you wish to go to trial?
22    A.   Yes, sir.
23    Q.   Do you further understand that inasmuch as you're
24    without funds with which to engage an attorney, the federal
25    public defender has been appointed to represent you, and Mr.
```

1    Johnson will be available to represent you at every stage of

2    these proceedings, including trial, should you wish to go to

3    trial, without any expense whatever to you?

4    **A.**   I understand, Your Honor.

5    **Q.**   And the cost of these proceedings will otherwise be

6    entirely at the expense of the United States, as well?

7    **A.**   Yes.

8    **Q.**   Further understand, if you should instead enter a plea

9    of not guilty, that you have the right to a speedy and

10   public trial by jury, you have the right to be confronted by

11   the government's witnesses and to cross-examine them, you

12   have the right to use the process of this Court to compel

13   witnesses to come in and testify on your behalf, and you're

14   presumed to be innocent of these charges until proven guilty

15   beyond a reasonable doubt.

16        Do you understand that?

17   **A.**   I do.

18   **Q.**   And by proof beyond a reasonable doubt, I'm referring

19   to those three essential elements that I told you about that

20   constitute the offense in this case as set forth in Count

21   Two.  All of those would have to be so proved beyond a

22   reasonable doubt.

23        Do you understand that?

24   **A.**   Yes, sir, I understand.

25   **Q.**   Do you further understand that if you instead entered a

1  plea of not guilty and went to trial, at that trial, you're

2  entitled to take the witness stand and testify on your own

3  behalf?

4  　　　Do you understand that?

5  **A.**　Yes, sir.

6  **Q.**　Do you further understand that if you did go to trial

7  and chose not to testify, that fact would create no

8  inference or presumption of guilt, and the jury would be so

9  instructed, since, as I've already informed you, you're

10  presumed to be innocent of these charges until proven guilty

11  beyond a reasonable doubt.

12  　　　Do you understand that?

13  **A.**　Yes, sir, Your Honor.

14  **Q.**　Do you further understand that should you plead not

15  guilty, at the trial it would be necessary that the

16  government come forward with witnesses to prove these

17  charges against you beyond a reasonable doubt in order for

18  you to stand convicted of that which is set forth in Count

19  Two?

20  　　　Do you understand that?

21  **A.**　Yes, Your Honor.

22  **Q.**　And do you further understand that by entering a plea

23  of guilty to Count Two, you waive your right to require the

24  government to prove that charge against you beyond a

25  reasonable doubt, and you waive your constitutional rights

1    the Court's telling you about?

2    **A.**    Yes, Your Honor.

3    **Q.**    In particular, you waive your constitutional right

4    against self-incrimination with respect to the offense to

5    which you've pled guilty as set forth in Count Two?

6        Do you understand that?

7    **A.**    I understand, sir.

8    **Q.**    Further understand, that if the Court accepts your plea

9    of guilty, there will not be a further trial of any kind, so

10    that by pleading guilty, you waive your right to trial,

11    including your right to trial by jury?

12    **A.**    Yes, sir.

13    **Q.**    You also understand that the Court does intend to

14    question you under oath, on the record, in the presence of

15    your attorney about the offense to which you've pled guilty,

16    and if you fail to answer those questions truthfully, you

17    may later be prosecuted for perjury or false swearing on

18    account of that failure?

19        Do you understand that?

20    **A.**    I understand.

21    **Q.**    You further understand that under the terms of this

22    plea agreement, as I've told you more times than you

23    probably care to hear already, that you're subject to a term

24    of imprisonment of 15 years, exactly 15 years; and a term of

25    supervised release of 20 years; and a fine of as much as

USA v TAYLOR

1    $250,000, and it may be greater or less, as I set forth in

2    referring to it in the plea agreement itself; as well as a

3    $100 Special Assessment; and restitution can be required of

4    you to any victim.

5          Do you understand that, also?

6    **A.**    I understand, sir.

7    **Q.**    I want to speak to you, in particular, about supervised

8    release.  You're subject to a term of supervised release of

9    20 years.  And that term of supervised release will be

10   subject to various terms and conditions, some of which may

11   limit your freedom to some limited extent.  The Court has a

12   number of general requirements for supervised release on

13   which virtually all defendants are placed.  In your case,

14   those terms and conditions are much more stringent.  And

15   what I want you to know is that the Court may with respect

16   to your status as a sex offender impose all of the sex

17   offender requirements that are set forth by order of this

18   Court that are called standard conditions and optional

19   conditions, and the Court may in your case impose every one

20   of them.

21         And so what I want to ask you is whether or not you

22   recall having any discussion with Mr. Johnson about what

23   those terms are of the sex offender standard and optional

24   conditions?

25         Are you aware of all of them?

1    **A.**   I'm aware of them, sir.

2    **Q.**   All right.  And so it may be, as I've indicated to you,

3    that the Court will impose all of those as conditions in

4    this case.  We'll make that determination at sentencing.

5         Do you understand that?

6    **A.**   Yes, sir.

7    **Q.**   Now then, let me note to you that if you violate any of

8    the terms and conditions of your supervised release, the

9    Court may impose a further term of imprisonment beyond that

10   which you've already served for this offense, which could be

11   as long as another two years.

12        Do you understand that?

13   **A.**   Yes, sir.

14   **Q.**   And the Court may then place you on supervised release

15   again.  And the Court could potentially do that over and

16   over and over as long as you're on supervised release.

17        Do you understand that?

18   **A.**   I understand, Your Honor.

19   **Q.**   And what that would mean is that that term of

20   supervised release that I'm referring to now as being a

21   maximum of 20 years could possibly be extended well beyond

22   that if you violate repetitively those terms and conditions.

23        Do you understand that?

24   **A.**   I do, Your Honor.

25   **Q.**   Do you also understand that there is one set of

USA v TAYLOR

1   conditions where if there's a violation of the terms of

2   supervised release, the Court would find it mandatory that

3   your supervised release be revoked and that you be sentenced

4   to not less than five years for that violation.  And those

5   conditions are all which can be found in the following

6   chapters in the United States Code, the following sections

7   of the United States Code that are under the categories that

8   I will give them to you.

9        Chapter 109A on sexual abuse.

10       Chapter 110 on sexual exploitation and other abuse of

11  children.

12       Chapter 117 on transportation for illegal sexual

13  activity and related crimes.

14       Section 1201 on kidnapping.

15       And Section 1591 on sex trafficking of children or by

16  force, fraud or coercion.

17       If you were to violate any of those statutes, then the

18  supervised release would not only be mandatorily revoked,

19  but you would be sentenced to a further term of imprisonment

20  of at least five years, and it could be far longer.

21       Do you understand all that?

22  **A.**   I understand, Your Honor.

23  **Q.**   Now then, do you believe you understand then all those

24  factors that go into the matter of supervised release?

25  **A.**   Yes, sir.

USA v TAYLOR

1    **Q.**   Do you also understand that the Court's not bound by

2    this agreement, but, of course, if the Court doesn't accept

3    it, you may withdraw your plea of guilty?

4    **A.**   Yes, sir.

5    **Q.**   Mr. Taylor, you have the right to plead not guilty, and

6    if there's any doubt whatever in your mind as to whether

7    you're guilty of the offense charged in Count Two, the Court

8    would urge you to plead not guilty.

9         What is your wish as to Count Two?

10   **A.**   To plead guilty, sir.

11   **Q.**   Other than your written plea agreement filed and read

12   here today, have you been made any promises of anyone of

13   leniency or light sentence or probation?

14   **A.**   No, sir.

15   **Q.**   Have you been threatened by anyone in any way, has

16   anyone used any means of intimidation, or coercion, or

17   pressure to induce you to enter a plea against your will?

18   **A.**   No, sir.

19   **Q.**   Are you satisfied with your attorney, Mr. Johnson, in

20   this case?

21   **A.**   Yes, sir.

22   **Q.**   Do you feel he's represented you fully and fairly?

23   **A.**   I do.

24   **Q.**   Has he spent a good deal of time with you developing

25   this case?

USA v TAYLOR

1    **A.**    Yes, sir.

2    **Q.**    Now, back to your written plea agreement, filed and

3    read here today, is that the entire agreement between you

4    and the United States?

5    **A.**    It is, Your Honor.

6    **Q.**    Are there any side agreements of any kind?

7    **A.**    No.

8    **Q.**    Do you then offer to enter a plea of guilty to Count

9    Two of the indictment voluntarily and of your own free will?

10   **A.**    Yes, sir.

11   **Q.**    Do you do it with the full understanding that you're

12   waiving your constitutional rights the Court's told you

13   about, including your right to a fair and speedy trial by

14   jury?

15   **A.**    Yes, sir.

16   **Q.**    And you do it, as well, with the full knowledge of the

17   consequences of your plea, including the penalty that the

18   Court must impose of 15 years' imprisonment, and 20 years'

19   supervised release?

20        Do you understand that?

21   **A.**    I understand, Your Honor.

22   **Q.**    As well as your agreement to abandon the iPhone and

23   iPod and the laptop computer?

24   **A.**    Yes, sir.

25   **Q.**    And your agreement not to appeal any sum that the Court

1    imposes as restitution to the victim in this case?

2    **A.**    I understand, Your Honor.

3    **Q.**    And I would ask you, then, if you also understand that

4    you're subject to registering as a sex offender for life?

5    **A.**    Yes, sir.

6    **Q.**    The Court would ask you whether or not you waive

7    further reading of Count Two or are you ready to have your

8    plea taken in the case?

9    **A.**    I waive further reading, sir.

10            THE COURT:  The clerk will take the defendant's

11    plea in writing.

12            THE CLERK:  If you would please listen as I read.

13        The *United States of America versus Joshua Mark Taylor,*

14    Criminal Number 2:14-00240.

15        Guilty plea.

16        In the presence of Rhett H. Johnson, my counsel, who

17    has fully explained the charges contained in the indictment

18    against me and, having received a copy of the indictment

19    from the United States Attorney before being called upon to

20    plead, I hereby plead guilty to Count Two of the five-count

21    indictment.

22            MR. JOHNSON:  May I approach, Your Honor?

23            THE COURT:  Please do.

24        Kelley.

25        (Pause.)

USA v TAYLOR

```
1              MR. JOHNSON:  Your Honor, Mr. Taylor has signed
2    the written plea agreement.  If I may approach?
3              THE COURT:  If you would.
4         The defendant's written plea of guilty to Count Two of
5    the five-count indictment in this case, having been signed
6    by him in the presence of the Court, is received and filed.
7    BY THE COURT:
8    Q.   Mr. Taylor, tell me in your own words what it is that
9    you did as more fully charged in Count Two of the indictment
10   in this case?
11   A.   Your Honor, in 2013, I worked as a teacher at Collins
12   Middle School in Fayette County, West Virginia.  And I had a
13   inappropriate relationship, and nude pictures were sent by
14   the victim, GM -- [victim name redacted per the Court] -- to
15   myself.
16   Q.   And how old was the victim?
17   A.   12 years old.
18   Q.   And was she a student in your class?
19   A.   She was a student, sir, yes.
20   Q.   And that occurred, did you say, in the month of
21   December of 2013?
22   A.   Yes, sir.
23   Q.   And what was the visual depiction you had; was it a
24   single image or were there several?  Tell me something more
25   about that.
```

USA v TAYLOR

1    **A.**    She sent me several pictures, Your Honor.

2    **Q.**    She sent you several pictures?

3    **A.**    Yes, sir.

4    **Q.**    And that was lascivious exhibition of her genitals or

5    pubic area?

6    **A.**    Yes, sir.

7    **Q.**    And those were sent to you in what manner?  What was

8    the vehicle by which they were sent?

9    **A.**    She sent by text message, iMessage onto my iPhone.

10    **Q.**    So it came through on your iPhone, through the

11    Internet?

12    **A.**    Yes, sir.

13    **Q.**    And there were several such pictures of her; is that

14    correct?

15    **A.**    That's correct, sir.

16    **Q.**    And all the pictures were of her, not somebody else?

17    **A.**    That's true, Your Honor.

18    **Q.**    And you knew her at the time to be about 12 years of

19    age, I take it?

20    **A.**    Yes, sir.

21    **Q.**    And when you received those pictures, where were you

22    located?

23    **A.**    In Oak Hill, West Virginia, Your Honor.

24    **Q.**    Was that in your home?

25    **A.**    Yes, sir.

1    **Q.**   And so it was in your home, in Oak Hill, Fayette

2    County, West Virginia?

3    **A.**   That's correct.

4    **Q.**   Let me ask whether, in particular, you would have been

5    in possession of those images that you've referred to that

6    were sent to you by her, the 12-year-old, on December 14,

7    2013?

8    **A.**   Yes, sir.

9    **Q.**   And so would you have received those images on that

10   date as well?

11   **A.**   Yes.  Yes, sir.

12          THE COURT:  And let me ask whether, Mr. Johnson,

13   the defendant has any further basis that he wishes to add

14   for the factual basis for the plea?

15          MR. JOHNSON:  No, Your Honor.

16          THE COURT:  And does the government?

17          MS. JOHNSTON:  No, Your Honor, but we do have a

18   copy of the images.  They are really -- in this case, there

19   are a total of six sexually explicit images.  And I have

20   those for the Court.  And I'd ask that they be filed under

21   seal.

22          THE COURT:  Thank you.

23       Is it agreed that those six images that Ms. Johnston is

24   about to hand the Court are images that the defendant

25   received on or about this December 14, 2013, date, in Oak

1    Hill -- Fayetteville -- that is, Fayette County?

2              MR. JOHNSON:  Your Honor, the evidence has been

3    made available to us.  I have no reason to believe that what

4    Ms. Johnston is about to hand up contains anything other

5    than what we've reviewed.

6              THE COURT:  So do I understand you've not seen the

7    images?

8              MR. JOHNSON:  We have seen the images, Your Honor.

9              THE COURT:  You just don't know whether they are

10   the ones you've seen?

11             MR. JOHNSON:  I don't know which particular sample

12   is being provided.  We've viewed ample evidence, Your Honor.

13             THE COURT:  And so you're satisfied that there are

14   at least six such images, and if that's the case -- correct?

15             MR. JOHNSON:  Yes, Your Honor.

16             THE COURT:  -- then the Court would be pleased to

17   receive them.

18             MS. JOHNSTON:  Your Honor, just a couple things I

19   want to just clarify for the record; that as Mr. Taylor has

20   admitted here today, throughout the course of this

21   relationship, he knowingly received sexually explicit images

22   of the minor.  The way we basically charged it and presented

23   it to the grand jury was that with -- there was one image

24   that we specifically -- we knew that he had received during

25   the course of his relationship at least six sexually

1    explicit images.

2         The way we charged it, though, there's one specific

3    sexually explicit image which is included here in the top

4    left-hand corner.  The Court will see it's IMG-9965.  And

5    I've shown it to Mr. Johnson.  And Mr. Johnson actually has

6    seen all six of these sexually explicit images at one point

7    in time when we've gone back and forth in working this case

8    together.  So I just want to make that clear, that specific

9    image does show the lascivious exhibition of the genital

10   area of the minor in this particular case, and I'd ask that

11   all six of these be filed under seal.

12        Your Honor, one other thing --

13        THE COURT:  Before you leave that, is that your

14   understanding, as well, Mr. Johnson?

15        MR. JOHNSON:  Yes, Your Honor.

16        THE COURT:  And yours, also, Mr. Taylor?

17        THE DEFENDANT:  Yes, sir.

18        THE COURT:  Excuse me.  Please go ahead.

19        MS. JOHNSTON:  I'm sorry, Your Honor.  There's one

20   other thing I'd like to bring to the Court's attention.  As

21   I look around, there doesn't appear to be anybody here other

22   than the victim's family in the courtroom and Court

23   personnel.

24        Your Honor, as you know, under the statute, 18, U.S.C.,

25   Section 3509, the government is obligated and goes to great

USA v TAYLOR

1    lengths to not identify any minor.  And Mr. Taylor, I'm

2    sure, did not mean to do so on purpose, but he did

3    specifically refer to the minor in this particular case, her

4    name -- her full name.  The way it is charged in the

5    indictment is we say "a person known to the grand jury," and

6    in this plea agreement, it says, "Minor."

7          So I would ask that either this transcript be placed

8    under seal, or that her name -- specific name only be

9    referred to in that transcript as "GM."

10               THE COURT:  As which?

11               MS. JOHNSTON:  Capital "G," capital "M," and not

12   her full name be a part of that transcript.

13               THE COURT:  Capital "G," capital "M."

14               MS. JOHNSTON:  Yes.

15               THE COURT:  I recall reference to the first name.

16   I didn't know or recall that the second was used, but

17   whatever it is, the transcript will be searched for it and

18   the name will be redacted and replaced by the initials

19   capital "G," and capital "M."

20               MS. JOHNSTON:  Thank you, Your Honor.

21       May I approach?

22               THE COURT:  Please.

23       Did you say "IMG" in the upper left-hand corner?

24               MS. JOHNSTON:  Yes, Your Honor.  It's

25   IMG-9965-PNG.

USA v TAYLOR

1              THE COURT:  The Court receives that image, as well

2    as the other five, and will direct that the images be

3    sealed.

4         Do the parties have any further evidence to present in

5    this matter?

6              MS. JOHNSTON:  The United States does not, Your

7    Honor.

8              MR. JOHNSON:  No, Your Honor.

9    BY THE COURT:

10   **Q.**   And so I'll ask you then, Mr. Taylor, did you do the

11   acts to which you've plead guilty as more fully set forth in

12   the plea agreement in this case?

13   **A.**   Yes, sir.

14   **Q.**   And as more fully set forth in Count Two?

15   **A.**   Yes, sir.

16   **Q.**   At the time you did those acts, did you know and

17   understand and intend what you were doing?

18   **A.**   I did.

19   **Q.**   Are you pleading guilty then because you are, in fact,

20   guilty of that charged in Count Two?

21   **A.**   I am.

22   **Q.**   Do you understand all the proceedings that have taken

23   place here today?

24   **A.**   Yes, sir.

25   **Q.**   And do you wish to go forward with your plea of guilty?

USA v TAYLOR

1    **A.**    Yes, I do.

2    **Q.**    Please be seated.

3            THE COURT:  The Court finds there is a factual

4    basis for the plea, and it is entered freely and

5    voluntarily, with the full knowledge of the consequences of

6    the plea, including the possible penalty that the Court may

7    in this case impose.

8        The Court will take under consideration the question of

9    the acceptance of the plea agreement and make that decision,

10   in all likelihood, once the Court has seen the Presentence

11   Report.

12       And the Court will, of course, direct a presentence

13   investigation by the Probation Department of this Court, and

14   continues this case for sentencing until September 23, 2015,

15   at 1:30 in the afternoon.

16       Is that a satisfactory date and hour for counsel?

17            MS. JOHNSTON:  Yes, Your Honor.

18            MR. JOHNSON:  Yes, Your Honor.

19            THE COURT:  And do the parties have anything

20   further at this time?

21            MR. JOHNSON:  No, Your Honor.

22            MS. JOHNSTON:  No, Your Honor.

23            THE COURT:  We'll stand continued as indicated.

24   Thank you.

25            THE CLERK:  All rise.

```
 1              (Proceedings concluded at 2:37 p.m.)

 2                      CERTIFICATE OF OFFICIAL REPORTER

 3         I, Catherine Schutte-Stant, Federal Official Realtime

 4    Court Reporter, in and for the United States District Court

 5    for the Southern District of West Virginia, do hereby

 6    certify that, pursuant to Section 753, Title 28, United

 7    States Code, the foregoing is a true and correct transcript

 8    of the stenographically reported proceedings held in the

 9    above-entitled matter and that the transcript page format is

10    in conformance with the regulations of the Judicial

11    Conference of the United States.

12

13         s/Catherine Schutte-Stant, RDR, CRR

14    _____ September 25, 2020

15         Catherine Schutte-Stant, RDR, CRR
           Federal Official Court Reporter
16

17

18

19

20

21

22

23

24

25
```